## Jo Joseph v. State of Nebraska.

Filed April 26, 1935. No. 28734.

*Leonard A. Flansburg, O'Sullivan & Southard* and *Philip Birnbaum,* for plaintiff in error.

*Paul F. Good, Attorney General,* and *William H. Wright, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ.

DAY, J.

The plaintiff in error was indicted by a Douglas county grand jury with seventy other defendants charging them with a conspiracy to commit a felony (Comp. St. 1929, sec. 28-301) in violation of section 28-1217, Comp. St. 1929, by making false statements of the value of certificates of stock. The plaintiff in error, hereinafter for convenience called defendant, was convicted upon a separate trial continuing from January 9 to January 24, 1934.

The trial court refused to give an instruction requested by the defendant as follows: "If you believe from the evidence that any witness who testified in this case has wilfully testified falsely to any material fact in said case, then you are at liberty to entirely disregard all of the testimony of any such witness." It is a time-honored maxim of the law that, in weighing testimony, a jury should consider, where a witness wilfully testified falsely as to one matter, that it impairs the credibility of his testimony upon other matters.

In *Titterington v. State,* 75 Neb. 153, it was held: "An instruction which informs the jury that, if they believe that a witness has wilfully and corruptly testified falsely as to any material fact, they are at liberty to reject all or any portion of the testimony of such witness, correctly states the rule to be applied to such cases."

This rule is quoted with approval in *Christiancy v. State,* 106 Neb. 822, which opinion also quotes from Starkie on Evidence (9th Am. ed.) p. 766, as follows: "As the credit due to a witness is founded in the first instance on general experience of human veracity, it follows that a witness who gives false testimony as to one particular cannot be credited as to any, according to the legal maxim, *'falsus in uno, falsus in omnibus.'* The presumption that the witness will declare the truth ceases as soon as it manifestly appears that he is capable of perjury. Faith in a witness' testimony cannot be partial or fractional; where any material fact rests on his testimony, the degree of credit due to him must be ascertained, and according

to the result his testimony is to be credited or rejected."

It is the well-established law of this jurisdiction that the defendant in a criminal case is entitled under proper circumstances to have the requested instruction given as a correct standard by which the jury may pass upon the credibility of a witness. An instruction correctly states the rule which informs the jury that they may disregard the testimony of any witness who they believe from the evidence has wilfully testified falsely. Jones, Commentaries on Evidence, 2473; *Atkins v. Gladwish,* 27 Neb. 841; *Johnson v. State,* 34 Neb. 257. Many other Nebraska cases are found in the digest to the same effect. The instruction requested by the defendant in the instant case was a proper and correct statement of the law. Was the refusal of the trial court to instruct the jury as requested erroneous? Referring again to the *Titterington* case, *supra,* it held: "Where, in a proper case, such an instruction is tendered, it is error for the court to refuse to give it because it does not contain the qualifying words 'unless corroborated by other competent proof.'" See, also, *Markiewicz v. State,* 109 Neb. 514; *Barber v. State,* 75 Neb. 543; *State v. Wilcox,* 48 S. Dak. 289.

Where the condition of the testimony is such as justifies an instruction based upon the legal maxim *falsus in uno, falsus in omnibus,* and a proper instruction is requested, it is error for the court to refuse to give it.

Is the testimony in the case at bar such as required the trial court to give the requested instruction? It is true that there was a direct and serious conflict in the the evidence. But merely a conflict in the evidence is not sufficient to require the giving of the instruction. *Markiewicz v. State,* 109 Neb. 514; *Drawbridge v. State,* 115 Neb. 535. There must be evidence tending to prove that a witness wilfully testified falsely upon a material matter before the court is required to instruct on the principle of *falsus in uno, falsus in omnibus.* The evidence must be sufficient to justify the jury in reaching the conclusion that the witness wilfully testified falsely

on a material matter. *Miller v. State,* 139 Wis. 57; *Judge v. Jordan,* 81 Ia. 519.

Where there is testimony from which a jury could find that a witness has wilfully testified falsely on a material issue in the case, it is error to refuse a requested instruction that, if they so find, testimony of such witness on other material matters may be disregarded.

It is the duty of defendant complaining of trial court's refusal to give instruction based on maxim *falsus in uno, falsus in omnibus,* to indicate testimony requiring it. The defendant relies upon the testimony of Stella Lynch, a witness for the state, as being sufficient to require the court to give the requested instruction. The witness was arrested when the police raided the office of the corporation of which defendant was an officer and was indicted with defendant. Before this case was tried, the criminal charge against her was dismissed. Since the preliminary examination, she was employed by the county attorney. She testified that the corporate record and minute book was known to her, because it had been kept in the offices of the National Investors in the Union State Bank Building, and she identified signatures in the same. When it was developed on her cross-examination that the book was not kept in the office, she made evasive answers and admitted she did not know where it was kept. This exhibit was admitted over defendant's objection and without her testimony. The identification was insufficient. She further testified that one of the alleged conspirators, L. Stern, was present when a notation was made on August 13. On cross-examination, she admitted she was not employed by the company on that date and did not witness the signing of papers in the book.

The incorporation of the company claimed by the state to be a part of the conspiracy to commit a felony and the record of defendant's attendance at corporation meetings were material matters. The record had been excluded by the court because of insufficient foundation, but was admitted solely upon the identification of this witness.

There was testimony directly and definitely in conflict, but the admissions of the witness to the falsity of the testimony were such that the jury could have found that she wilfully testified falsely in this material matter.

She identified most of the 336 exhibits in this case which were vital to the prosecution. If she was not working there and did not see some of these exhibits, she was incompetent to identify them. And if the jury found that she wilfully testified falsely, they had a right to consider this in relation to her credibility on other material matters. It was not enough that the jury consider merely her interest in the prosecution, if such was apparent; the defendant was also entitled to the instruction requested.

Hugo Kvetensky, another witness, is indicated as giving testimony requiring the instruction. He testified that he signed an agreement to buy only 25 shares and was confronted with a signed order for 100 shares. He testified that a $1,000 street railway bond was taken by the salesman of the company, by making fraudulent representations, and then admitted he turned it in to pay for 100 shares. He testified he talked to Joseph in the company offices, but did not identify him. His testimony was refuted by documentary evidence, some of it produced by himself, and in addition was denied by other witnesses. This testimony is sufficient to justify the jury in believing that the witness testified falsely. It is not for this court to determine whether the witness wilfully testified falsely; the credibility of witnesses is for the jury, under proper instructions. An examination of the record reveals that there is testimony which justified the jury in finding that a witness wilfully testified falsely on a material issue in the case, and it was error to refuse a requested instruction that, if they so found, they might disregard the testimony of such a witness on other material matters.

This case was prosecuted under section 28-301, Comp. St. 1929, which provides punishment for any two or more persons who conspire and do any act to effect the

object of the conspiracy. The felony which the defendant is charged with conspiring to commit is defined by section 28-1217, Comp. St. 1929, which is as follows:

"Any person who with intent to deceive, cheat or defraud, represents, makes, issues or publishes or causes to be represented, made, issued, or published, or who participates in the representation, making, issuance or publication of any oral or written statement, letter, representation, report or advertisement concerning the value or as to facts affecting the value of any certificate of stock, shares, treasury shares, bonds, debentures, certificates of participation, units, undivided interest, notes or other obligations or evidence of indebtedness, or of title which constitutes evidence of or is secured by title to, interest in, or lien upon any or all of the property or profits of the issuer, or any instrument issued evidencing or representing any right to participate or share in the profits or earnings or the distribution of assets of any business carried on for profit, or other instruments in the nature thereof by whatsoever name known or called, or undivided interests in the capital, property, assets, profits, or business of any person, corporation, partnership, joint stock company, declaration of trust association or other association or individual, whether evidenced by written or printed certificates or not, and who knows or through the exercise of reasonable diligence could have known, or who has reasonable ground to believe that any material representation, prediction or promise made in such statement, letter, representation, report or advertisement is false, shall be deemed guilty of a felony."

Under an indictment in a single count the defendant was charged with a conspiracy to violate this statute relating to false statements and advertisements as to the value of securities. The indictment was attacked all through the trial on the ground that section 28-1217, Comp. St. 1929, was void and unconstitutional. For the purpose of clarity, the essential parts of the statute for this opinion are stated briefly as follows: Any person

who with intent to deceive, cheat or defraud, represents, makes, issues or publishes any statement or representation concerning the value of any security, and (1) who knows, or (2) through the exercise of reasonable diligence could have known, or (3) has reasonable ground to believe that the statements or representations are false, shall be deemed guilty.

The statute under consideration prohibits certain acts when done with a certain intent. Statutes may and do wholly omit the element of intent from the essential elements of a statutory crime and the enactment is, of course, valid. However, this statute provides for intent. It states that a person who "with intent to deceive, cheat or defraud" makes false statements concerning the value of securities comes within the statute. The acts of making false statements are not prohibited unless made with intent to deceive, cheat or defraud. Even then they are not prohibited unless they are made by one who knows, or "through the exercise of reasonable diligence could have known," or "has reasonable ground to believe" that any "material representation * * * is false."

Thus the statute prohibits the making of a representation or statement concerning the value of securities only when made with the specific intent to deceive, cheat or defraud, and when such representations are made by a person who actually knows them to be false, or through the exercise of reasonable diligence could have known, or who has reasonable ground to believe them to be false. An act which is made criminal only when committed with a specific intent is not prohibited unless that intent actually exists in the mind of the perpetrator. This specific intent presupposes knowledge and cannot exist under a state of facts where there is absence of knowledge.

Intent is defined by Webster's New International Dictionary (2d ed.) as the "design or purpose to commit any wrongful act incidental to a crime."

"At common law a crime possessed the element of an

evil intention together with an unlawful action." 8 R. C. L. 60, sec. 11. Statutes may create crimes without making criminal intent an essential element of the crime. 16 C. J. 76. A familiar example is that of statutory rape, where intent is not an essential element of the crime. Intent is not required in the sense of being based on knowledge on the part of the defendant of the facts constituting the crime. Belief of defendant that the female was over the statutory age, even if founded upon her statement, does not exonerate. The physical act is forbidden by statute, regardless of knowledge or intent. Another familiar example of statutes constituting acts criminal without intent being an essential element are those prohibiting certain acts by bank officials in the operation of their bank.

But here we have a different type of statute which makes intent to defraud an essential element of the crime. Such intent requires knowledge. Now the intent required by this statute is one to cheat, deceive or defraud. This must mean that he wills to do the overt act for the purpose of cheating, deceiving or defrauding. But it further provides that, if the defendant, through the exercise of reasonable diligence, could have known or had reasonable grounds to believe the statement false but did not actually know it to be false, then it cannot be said that he had the knowledge essential to the existence of the specific intent to deceive, cheat or defraud. The evident purpose of the statute was to prohibit *false* representations and statements concerning the value or facts affecting the value of securities made with intent to cheat, deceive or defraud. The wording of the act attempts to make it a criminal offense to make a representation or statement concerning the value or facts affecting the value of securities if made with intent to cheat, deceive or defraud, whether the statement or representation is actually true or false, if the person making it has reasonable ground to believe it to be false. In other words, if the person making a representation with

regard to value with intent to deceive has reasonable ground to believe that statement is false, he is guilty under this statute even though the representation be actually true. The statute does not say that one who makes a *false* representation or statement concerning value, and has reasonable ground to believe it is false, shall be guilty. It declares that any one who makes *any* representation or statement concerning value, which wording necessarily includes any representation, *true or false,* with intent to deceive, and has reasonable ground to believe that his representation or statement is false, is guilty though the representation or statement be actually true.

Section 28-1217, Comp. St. 1929, was enacted in 1921 and appears as chapter 312, Laws 1921. The title is: "An act relating to the representation, making, issuing or publishing of any oral or written statement, letter, representation, report or advertisement concerning the value or facts affecting the value of stocks, bonds or other securities, with intent to deceive, cheat or defraud."

The act attempts to make such false statements criminal, made with intent to defraud, if known to be false, or if by reasonable diligence they could be known to be false or there was reasonable ground to believe them false. The last two provisions which provide that the crime may exist without knowledge make the act broader than the title. In a recent case, this court held: "An act must not be broader than its title, and where the subject of the legislation is not clearly expressed in the title, the act will be in contravention of section 14, art. III of the Constitution." *Moeller, McPherrin & Judd v. Smith,* 127 Neb. 424. In *State v. Dawson County Irrigation Co.,* 125 Neb. 836, it is said: "If the act is broader than its title, then, to the extent that it goes beyond the scope of its title, it is invalid. This rule is so well established that citation of authorities to sustain it is not deemed necessary."

The crime defined by the statute as the making of

false statements with intent to defraud is limited by the title to those making the statements with knowledge of their falsity. It cannot include those who make false statements without knowledge of falsity. A statute must not be broader than its title. Const., art. III, sec. 14.

Title of act reading "to provide punishment for one who makes statements or representations with intent to defraud" is not broad enough to include imposition of penalty upon one who does not know that the statements and representations are false, but by the exercise of reasonable diligence could have known, or who had reasonable ground to believe that any material representation is false.

The defendant at a proper time in the proceedings moved to quash the indictment, which motion was overruled. The portions of the indictment material here are: That Jo Joseph and others "did * * * unlawfully and feloniously conspire and agree together * * * to commit a felony by making, issuing and publishing certain oral and written statements and advertisements concerning the value of certificates of stock, with intent to deceive, cheat and defraud, then and there well knowing that said statements were false and in violation of section 28-1217 of the Compiled Statutes of Nebraska for 1929; and pursuant to said unlawful and felonious conspiracy, did then and there with intent to deceive, cheat and defraud, represent, make, issue and publish, and did then and there participate in the representation, making, issuance and publication of, certain oral and written statements, letters, representation, reports and advertisements concerning the value of, and as to facts affecting the value of, certain certificates of stock, and at the time of making, issuing and publishing said oral and written statements, letters, representation, reports and advertisements, affecting the value of said certificates of stock, the above named conspirators knew, or had reasonable grounds to believe, that said representations, predictions and promises made in such statements, letters, representation, reports and advertisements were false."

Thereafter the indictment relates a number of overt acts of alleged false statements and then concludes with this language: "Said conspirators then and there well knowing, or having reasonable grounds to believe, that said representations, predictions and promises made in such oral and written statements and advertisements were false."

The defendant urged in the trial court and urges now that in a felony case the information or indictment must disclose the nature and cause of the accusation against him. This court has held that, where a statute states the elements of a crime, an information or indictment is generally sufficient which described the crime in the language of the statute. *Cordson v. State,* 77 Neb. 416; *Goff v. State,* 89 Neb. 287; *Philbrick v. State,* 105 Neb. 120.

The indictment, as will be noted, charges the defendant with making false statements relative to value of securities, with intent to defraud, knowing or having reasonable grounds to believe that they were false. It does not charge that in the exercise of reasonable diligence defendant could have known the statements were false. It is also noted that the word "material" is omitted from the charge that defendant had reasonable ground to believe that the (material) representations were false. It is a debatable question whether the omission was prejudicially erroneous to the defendant. However, the court submitted the case to the jury upon the charge in the indictment that the defendant made statements and representations, with intent to defraud, which he knew or had reasonable grounds to believe were false. The latter section of the statute having been determined invalid, a conviction thereunder cannot stand, and it is unnecessary to consider other assignments of error.

REVERSED AND REMANDED.