REQUESTED BY: Steven P. Finn, County Attorney of Antelope County, Neligh, Nebraska.
May a County Board of Supervisors assume the responsibility for the construction, improvement and maintenance of bridges on a township road which do not span streams, but rather drainage ditches?
No.
This opinion presupposes adherence to the statutes on the part of the County Board. It is, as will be seen, possible for the County Board, by failure to follow legislative mandate, to subject the county to a liability which it should not have if the statutes are complied with. But, of course, pursuit of such a course of action knowingly, brings the danger of liability, in possible taxpayer's suits.
In Richardson County v. Drainage Dist. No. 1, 92 Neb. 776, it was said:
 "At the common law it was ordinarily the duty of the county to erect and repair bridges; but, where a highway was crossed or cut for any purposes by other than highway authorities, it was the duty of those interfering with the road to restore the same. * * * This liability is usually expressly imposed and defined, in the case of a statutory undertaxing, by the undertakers' special act; but apart from any special provision, the liability both to build and maintain a bridge attaches where the highway is interrupted, or rendered seriously inconvenient, either with or without statutory authority."
Section 39-805 R.R.S. 1943 provides:
 "Whenever any public highway within this state shall cross or be crossed by any ditch or channel of any public drainage or irrigation district, it shall be the duty of the governing board of the drainage or irrigation district and the governing board of the county or municipal corporation involved to negotiate and agree for the building and maintenance of bridges and approaches thereto on such terms as shall be equitable, all things considered, between such drainage or irrigation district and such county or municipality. If such boards for any reason shall fail to agree with reference to said matter, it shall be the duty of the drainage or irrigation district to build the necessary bridges and approaches, and restore the highway in question to its former state as nearly as may be as it was made out prior to the construction of the ditch or channel in question, and it shall be the duty of the county or municipal corporation involved to maintain said bridges and approaches. . . ."
There follows a provision making the user of more than 75% of the water for other than irrigation or drainage purposes liable instead. We presume that provision has no applicability to your question.
This section was construed in Platte Valley PublicPower and Irrigation District v. County of Lincoln,163 Neb. 196. The Court there made it clear that the first duty of the parties is to negotiate and attempt to agree as to the matters stated in the statute. The Court distinguishedHenneberg v. County of Burt, 160 Neb. 250, and held for the county, in effect holding that the district continued to have maintenance responsibility for the bridges it had built. In the Henneberg case, of course, the county had removed a bridge on a township road which had been erected by the Drainage District, and replaced it with a tube which was found by the Court to be inadequate. The Court ordered the County to remove the tube and replace the bridge. Reading these two cases together, we believe the result is that if either the County or the District undertake to install a bridge without the agreement or documented attempted agreement required by Section 39-805, then such agency has full responsibility for the continued maintenance of such bridge. Buttressing this conclusion is State ex rel County ofBurt Washington Drainage Dist., 103 Neb. 763, wherein it was said:
 "One of the three bridges complained of was built by the county and for its condition defendant is not responsible."
Furthermore, Ritter v. Drainage Dist. No. 1, 148 Neb. 873, holds, at page 885, that the agreement must be specific as to the bridge involved. The Ritter case also treated Section 31-353, R.R.S. 1943, stating:
 "Upon every horn of the dilemma, the district and its supervisors are required to restore the bridge and its approaches in such manner as to accommodate and permit the maintenance of the public highway over and across the same."
Subsequent to the foregoing decisions, there has been enacted Section 2-3230, R.R.S. 1943. It is believed, however, to be so similar to Section 31-353 as to make no changes.
Since an agreement is prerequisite, may then, a County Board agree with a Drainage District to both build and maintain a bridge? We believe such a course of action would be, at the least, inadvisable, barring some unusual circumstances which would make it peculiarly advantageous to the County to do so. In Martin v. City of Lincoln, 155 Neb. 845, it was held that a resident taxpayer could prevent the illegal disposition of money of a municipal corporation or the illegal creation of a debt which he, in common with other property holders, might otherwise be compelled to pay. It was also said:
 "Another principle is that a resident taxpayer without showing any interest or injury peculiar to himself, may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. * * * It follows therefore, that for the purpose of this review it must be said that the contract . . . is an illegal one in that the meters involved are inferior and do not conform to the requirements of the specifications."
Similarly, in Haschke v. School District ofHumphrey, 184 Neb. 298, the school district attempted to contract for a builder to build a school building which it would lease from him. The court said:
 "A resident taxpayer without proof of an interest peculiar to himself may enjoin illegal expenditures of money by a public board. . .
 A school district in this state possesses no powers other than those granted by the legislature. The Pebco agreement was beyond the authority of the Humphrey officers and board, and the judgment was correct."
We therefore believe that an agreement between the County Board and a Drainage District whereby the county undertook the obligation of both construction and maintenance of a bridge, without receiving any corresponding benefit, would similarily be subject to a taxpayer's suit. For the foregoing reasons, we believe the county would be well advised to closely follow the provisions of the foregoing statutes.